ISAAC Z. STIGER *et al.*

*v.*

LUCINDA G. BENT.

*Filed at Springfield September 27, 1884.*

1. USURY—*who may avail of the defence.* A party not injuriously affected by an usurious transaction, is not allowed to complain or take advantage of the usury. So if a party sells land subject to a mortgage thereon, which is given to secure a debt, with usury reserved, and the purchaser assumes the payment of the debt as a part of the purchase money, such purchaser or those claiming under him can not interpose the defence of usury to a bill to foreclose the mortgage.

Syllabus.

2. PARTIES—*on bill to foreclose—wife of the debtor, after sale by the mortgagor.* On bill to foreclose a mortgage given by a husband and wife to secure the note of the former, after they have sold and conveyed the mort-gaged premises, the purchaser having assumed payment of the mortgage debt as a part of the purchase price, the wife of the mortgagor, having no interest in the matter, is not a necessary party, and no decree could be had against her if made a party.

111     328
102a¹⁵389
111     328
109a¹¹366
111     328
111a¹⁰584

3. SAME—*as to administrator of a remote grantee of the mortgagor— liability of such grantee in respect to incumbrance assumed by his grantor.* A mortgagor conveyed the mortgaged premises to one who assumed payment of the mortgage debt as a part of the purchase price, and he conveyed the same to another, who, out of the purchase money, paid the amount due on the mortgage, to the trustee named in the instrument, who had no right to receive the same, and wrongfully entered satisfaction of the trust deed on the record. It was *held,* on bill by the holder of the note secured to fore-close the trust deed, that the administrator of the last grantee was not a necessary party, for the reason that the estate he represented was under no liability for the payment of the mortgage debt.

4. ADMINISTRATION OF ESTATES—*payment of prior incumbrance on land purchased by the intestate.* Where a person acquires land subject to an incumbrance for the debt of a prior owner, and dies, his administrator is not authorized by law to pay such debt or incur expense on account of it.

5. MORTGAGE—DEED OF TRUST—*assignment of the debt—rights of the assignee as respects the security.* In equity a deed of trust is but an inci-dent to the debt it secures, and will pass with an assignment of the debt to the holder.

6. SAME—*unauthorized entry of satisfaction by trustee—of its effect upon the rights of parties and purchasers.* An entry of satisfaction of a deed of trust by the trustee when the indebtedness secured by it has not been paid, and the act is not authorized by the holder of the indebtedness, will have no effect upon the deed of trust as between the original parties, or as to subsequent·purchasers with notice.

7. SAME—*foreclosure without setting aside an entry of satisfaction wrongfully entered.* Where a trustee in a deed of trust, without.the authority of the holder of the note thereby secured, accepts payment, and enters sat-isfaction on the record, it will not be necessary, on bill to foreclose the trust deed, for a formal order setting aside the entry of satisfaction before a decree of foreclosure. If such entry ought to be set aside, it may in equity be treated as if never having been made, although at law the rule may be different.

8. SAME—*notice to purchaser of the want of authority in the trustee to accept payment of the debt.* Where a trustee enters satisfaction of a trust deed duly recorded, in consequence of a negotiation for the purchase of the land, and for the purpose of consummating the sale, and accepts payment of the amount of the debt secured from such purchaser without producing and

cancelling the note, and without authority from the holder thereof, the purchaser can not be said to have purchased without notice of the rights of the holder of the note.

9. SAME—*inference as to trustee's authority to receive payment of a note.* No authority in a trustee in a trust deed to collect the principal debt secured, and to enter satisfaction on the record of the trust deed, can be inferred merely from the fact that the money was borrowed of the holder of the note through a firm of brokers of which the trustee was a member, and that payments of interest on the note had been made to him before.

10. SAME—*production of the note secured—as evidence of non-payment.* The production of a promissory note secured by a trust deed, on the hearing of a bill to foreclose, raises a *prima facie* presumption that it has not been paid, and is still lawfully belonging to the complainant.

11. PAYMENT TO AN AGENT—*burden of proof to show agent's authority.* Where an agent has the possession of a promissory note after due, it may be inferred that he has authority to receive payment of it; but the burden is on the debtor who makes payment to the agent relying upon such inference, to show that the note was in his possession when the payment was made, and the fact that the note is neither surrendered nor offered to be surrendered, affords evidence the agent did not have it.

12. PURCHASER—*of his right to remove a prior incumbrance—and of other resulting rights—subrogation.* The purchaser of land subject to a prior incumbrance has the right to pay off the debt and thus relieve his land, and to receive the note evidencing the debt, for his own protection; and if such payment is not made under a previous contract with the party owing the same, the party so paying is entitled to be subrogated to all the rights of the holder of the indebtedness.

13. If payment of a note is made by one, of the note of another, pursuant to a contract that he shall pay the same, the party paying may be regarded as the agent of the debtor, and as such is entitled to receive and hold the note as an evidence of his having made payment, as well as for his own protection.

14. LACHES—*effect of delay in giving notice of mortgagee's right, to a purchaser.* The failure of the holder of a note secured by deed of trust, to give prompt notice to a subsequent purchaser of the land, making payment to the trustee and procuring his release of the trust deed, of the want of authority in the trustee to receive payment and make the release, will not bar the holder's right to a foreclosure, when it does not appear that the delay in giving the notice has worked an injury to the purchaser so paying the trustee.

15. SAME—*in equity—within the statutory period of limitation.* A court of equity applies the doctrine of *laches* in denial of relief sought, when the statutory period of limitation has not expired, only when, from all the circumstances in evidence, to grant the relief to which the complainant would otherwise be entitled will presumptively be inequitable and unjust to the defendants because of the delay.

16. SAME—*in the particular case.* A purchaser of land mortgaged by a former owner was unwilling to conclude the purchase without a satisfaction or release of the incumbrance, when the trustee, without having the note secured or authority from the holder, accepted payment of the debt, and made an entry of satisfaction upon the record of the trust deed, and converted the money paid, to his own use, and failed. In 1876 the holder of the note learned of the fact of such satisfaction, when he placed his note in the hands of attorneys for collection, giving no notice to the purchaser. Suit was not brought until in 1880, during which time the purchaser had died, giving by will the land to his wife for life, and directing that at her death it be sold, and of the proceeds $1500 be paid to a grand-son, and the residue be equally divided among his sons and daughters. On the hearing, the court decreed a foreclosure against all the defendants except the widow and grandson, whose interests were protected, by reason of the delay in filing the bill. On appeal by some of the residuary legatees, the decree was affirmed, as it did not appear that they were injuriously affected by the delay.

17. WITNESS—*competency of party against legatees and devisees.* On a bill to foreclose a mortgage on land of a deceased subsequent purchaser from the mortgagor, against his legatees and devisees, the complainant is not a competent witness in his own behalf against those defending as legatees or devisees.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. M. W. PACKARD, for the appellants:

Without setting aside the satisfaction of the trust deed, no foreclosure should have been had.

Louisa Arbogast being the owner of the land when the trust deed was given, was a necessary party to the bill; and so was the administrator *de bonis non* of Stiger. *McCall* v. *Lesher,* 2 Gilm. 47; *Winkelman* v. *Kiser,* 27 Ill. 21.

There was usury in the transaction, which the court below ignored. *Payne* v. *Newcomb,* 100 Ill. 611.

The entry of satisfaction of the trust deed made a *prima facie* case that the debt was paid, and shifted the burden of proof upon appellee to show it had not in fact been paid. *Fleming* v. *Parry,* 12 Harr. 47; *Vallé's Admx.* v. *American Iron Mountain Co.* 27 Mo. 455; *Harrison* v. *Johnson,* 18 N. J.

Eq. 420; *Freeholders* v. *Thomas,* 5 id. 39; *Allard* v. *Lane,* 16 Maine, 1.

Davis was held out as an agent of appellee by allowing him to collect the interest coupons, and to extend the time of payment, and by entrusting him with the trust deed.

Silence of the principal after notice of the acts of one assuming to act as his agent, may be sufficient evidence of a ratification of his acts. *Frothingham* v. *Haley,* 3 Mass. 70; *Shaw* v. *Nudd,* 8 Pick. 9; *Thayer* v. *White,* 12 Metc. 343; *Foster* v. *Rockwell,* 104 Mass. 167; *Johnson* v. *Jones,* 4 Barb. 369; *Williams* v. *Merritt,* 23 Ill. 623; 1 Livermore on Agency, 396; 2 Kent's Commentaries, 614; *Barbour* v. *Mortgage Co.* 102 Ill. 123; *Martin* v. *Judd,* 60 id. 78; *Booth* v. *Wiley,* 102 id. 84; *Ward* v. *Williams,* 26 id. 451; *Searing* v. *Butler,* 69 id. 575; Story on Agency, secs. 253, 255; 2 Greenleaf on Evidence, sec. 67.

Appellee should have repudiated Davis' act at once, and notified Stiger of his want of authority, if such was the fact, so as to enable him to secure himself.

Counsel also set up the *laches* in bringing suit, as a bar to equitable relief, besides making various other points.

Mr. Ira J. Bloomfield, for the appellee:

The fact that Larrimore and Davis collected the installments of interest, did not authorize them to collect the principal, nor justify the parties in paying over the money to Davis. *Cooley* v. *Willard,* 34 Ill. 68.

Biggs, by assuming this indebtedness, and agreeing to pay it as a part of the purchase money when he bought the land, thereby became the principal upon that note, and was guilty of gross negligence in paying the money and not taking up the note. *Keohane* v. *Smith,* 97 Ill. 156.

Davis did not profess to act as agent for appellee in collecting this money, but claimed it in his own right, and in that way, through the gross negligence of the parties, defrauded them.

Appellants are not in a position to set up usury. Besides, there was no usury in this transaction. By the agreed evidence appellee "never received anything above ten per cent, in any way." *Kihlholz.* v. *Wolf*, 103 Ill. 362.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 16th of September, 1868, William B. Arbogast, and Louisa, his wife, to secure the payment of his promissory notes to Lucinda G. Bent, of that date,—namely, one for $1100, payable three years after date, with interest thereon at the rate of ten per cent per annum after due, and six coupon notes, of $55 each, for the interest on the amount secured by that note before maturity, payable, respectively, the first, one day thereafter, and the others consecutively, one every six months,—conveyed a certain tract of land owned by her, in McLean county, to Reuben L. Davis, as trustee, with usual power of sale on default of payment, and the deed was duly recorded in apt time. On the 29th of September, 1869, they sold the same tract to A. E. Biggs, subject to the deed of trust, and executed a deed accordingly. On the 29th of August, 1873, Biggs contracted with Abraham Stiger to sell the land to him. At that time the interest had all been paid, but the principal note for $1100 was still unpaid. Stiger refused to purchase unless he could pay off the trust deed, and thereupon they applied to Davis, who said the deed was in his name, and that he could release it, and would do so on receipt of the amount due. Stiger thereupon paid him the amount due on the principal note, and Davis then entered upon the margin of the record of the deed of trust the following:

"STATE OF ILLINOIS, } ss.
   *McLean County.* }

"I hereby certify that the note described in this trust deed is satisfied in full, and the land therein described is hereby released from the lien thereof.

                        R. L. DAVIS, *Trustee.*"

And afterwards, on the same day, Stiger paid Biggs the balance of the purchase money agreed upon to be paid by him, and Biggs executed and delivered to Stiger a warranty deed for the land. The promissory note secured by the deed of trust was not surrendered to Stiger, nor was it shown to him by Davis, nor is it proved to have been in his possession at the time. Lucinda G. Bent knew nothing of the sale to Stiger, and the entry of satisfaction on the record of the deed of trust, at the time, nor until the spring of 1876, when she was informed thereof by Davis. Davis neglected to pay the money over to Mrs. Bent, and converted it to his own use. On the day she was informed of the sale to Stiger and of Davis' conduct in connection therewith, or within a few days thereafter, Mrs. Bent placed the note in the hands of her attorney for collection, but he delayed bringing suit thereon until the present bill was filed, on the pretence that he was awaiting a decision in certain suits then pending, in which kindred questions were involved. Abraham Stiger, after making his last will and testament, died. The will was properly proven, and admitted to probate on the 25th of May, 1878. Among other things he thereby devised this tract of land to his wife, Judith Stiger, during her natural life; and he further thereby devised, that after the death of his wife the land should be sold, and $1500 of the proceeds of such sale should be paid to his grand-son, John W. Stiger. He directed that the residue of his estate should be equally divided between his sons and daughters therein named. Executors are named in the will, who, it is shown, afterwards died, and then Jesse D. Enlow was appointed, by the proper court, administrator *de bonis non,* with the will annexed.

This bill was filed by Lucinda G. Bent, on the 9th of April, 1880, to foreclose the deed of trust. William B. Arbogast, Judith Stiger, John W. Stiger, Elmira M. Swope, Jane M. Kent, Celia A. Weitzel, William A. Stiger and Isaac Z. Stiger, are, by the bill as amended, made defendants. Answers

were filed by Judith Stiger, Elmira M. Swope, Jane M. Kent, William A. Stiger and Isaac Z. Stiger. John W. Stiger, being a minor, answered by his guardian *ad litem.* Subsequently, by leave of court, Reuben L. Davis and A. E. Biggs were made defendants. Decree by default was rendered against William B. Arbogast, Reuben L. Davis and A. E. Biggs, and the cause was then referred to the master in chancery to take and report proofs. On final hearing, the court decreed that the trust deed should be foreclosed as to all the defendants except Judith Stiger and John W. Stiger, but as to them the decree was, that the complainant, by reason of delay in commencing the suit after notice of the acts of her trustee, waived her right to foreclose, and hence that the life estate of the one and the legacy of $1500 to the other are preferred by the decree to the rights of the complainant. In all other respects it was decreed the equities are in favor of the complainant. This decree, on appeal to the Appellate Court for the Third District, was affirmed, and that affirmance is now assailed by this appeal, which is prosecuted by Isaac Z. Stiger and Jane M. Kent.

A point made in argument that the decree below was, even upon appellee's theory, for too large an amount, is put out of the case by the *remittitur* in the court below, and therefore demands no further notice.

The question of usury does not properly arise upon this record, although it is discussed by counsel in argument. As has been stated, Arbogast, the original debtor, and in whose note alone is usury, if anywhere in the transactions involved, sold to Biggs, and Biggs sold to Stiger. Biggs undertook, as a part of his contract with Arbogast, to pay off the indebtedness secured by the deed of trust, and Stiger, before receiving his deed from Biggs, attempted to pay off that indebtedness, and thought that he had done so. Both in the sale to Biggs and that to Stiger, payment of the indebtedness secured by the deed of trust constituted a part of the consideration for

executing the deed. It represented, *pro tanto,* so much pur-·
chase money. As to each of them, then, and those standing
in their places, it is impossible that there can be any ques-
tion of usury. Arbogast makes no complaint of the decree
on the ground of usury, and it is not admissible that other
parties not affected by it can interpose that defence. *Hen-
derson* v. *Bellew,* 45 Ill. 322; *Valentine* v. *Fish,* id. 462; *Pike*
v. *Crist,* 62 id. 461; *Maher* v. *Lanfrom,* 86 id. 520.

Objection is taken to the decree because it does not appear
that Louisa Arbogast was before the court as a party. Very
clearly, she was not a necessary party. She was not a maker
of the note secured by the deed of trust, and she was in nowise
personally liable for its payment. When, therefore, she had
sold her land, subject to the deed of trust, it is not possible
that she could have been further interested in that deed.
She had then received all she could receive for her land, and
the question of the payment of the indebtedness concerned
only Biggs and those claiming under him, and the party
entitled to receive such payment. No decree was sought, or
could properly have been rendered, against her.

Objection is also urged because Jesse D. Enlow, the ad-
ministrator *de bonis non,* with the will annexed, of Abraham
Stiger, deceased, is not made a defendant. We can see no
reason why he shall be considered an indispensable party.
The liability of Abraham Stiger and those claiming under
him, is not personal, and no individual decree is sought, or
could be, under the facts, properly rendered against him or
them. At no time could he or they have been sued at law
on this indebtedness. The proceeding is simply to enforce
the indebtedness against the land. As to him and them the
indebtedness affects the land alone. If they choose to let the
land go, they are no further interested. If they desire to
protect the land from the lien, they may do so, but then that
will be to save the land,—not to discharge any personal obli-
gation. With them it is purely voluntary. The administrator

is not authorized to pay such a debt or to incur expenses on account of it. *Smith* v. *McConnell,* 17 Ill. 135; *Phelps* v. *Funkhouser,* 39 id. 401; *Cutter* v. *Thompson,* 51 id. 390; *Bennett* v. *Whitman,* 22 id. 448; *Gridley* v. *Watson,* 53 id. 186.

The real contest here is, whether the payment by Stiger to Davis, and the entry of satisfaction by Davis on the record of the deed of trust, released the land from the operation of that deed, so far as Stiger and those claiming under him are concerned. Since this is a proceeding in equity, there can be no necessity for a formal decree setting aside the entry of satisfaction. If that entry ought to be set aside, it may, in equity, be disregarded, and treated as a nullity, although, at law, the rule would be different.

On the hearing, the complainant produced her note in evidence, and this raised a presumption that it was still unpaid and lawfully hers. (*Brinkley* v. *Going,* Breese, Beecher's ed. 366; *McConnel* v. *Hodson,* 2 Gilm. 640; *Thompson* v. *Hoagland,* 65 Ill. 310; *Curtiss* v. *Martin,* 20 id. 557.) To overcome that presumption the respondents gave in evidence and relied upon the entry of satisfaction upon the record of the deed of trust; and in reply to this, complainant contends that the satisfaction was entered without authority, and that it is therefore of no effect. An entry of satisfaction of a trust deed by the trustee, where the indebtedness secured by it has not been paid, and the act is not authorized by the holder of the indebtedness, has no effect upon the deed of trust as between the original parties, nor as to subsequent purchasers with notice. (*Insurance Co.* v. *Eldridge,* 102 U. S. 545.) It is claimed here, however, that Stiger was not a purchaser with notice, and upon the solution of this hinges the present question.

Stiger's negotiation for the land commenced, as has been seen, before the entry of satisfaction was made. The entry was made in consequence of that negotiation, and to aid in carrying it out. The record of the deed of trust informed

him, before the entry was made, that Davis merely held the title in trust to secure the payment of the promissory note, and it also informed him that that note was not payable to Davis, but that it was payable to Lucinda G. Bent, and that it was negotiable by indorsement. The note, he knew, was not surrendered or cancelled at the time, and the evidence fails to show that it was then presented or in the possession of Davis. It is true, Biggs, in one place in his evidence, seems to intend to create an impression that the note was, at the time, present in the possession of Davis, but on further examination he shows that he did not himself see the note, and no one else testifies to having seen it at that time. In equity, the deed of trust is but an incident to the debt, and will pass with it for the benefit of the holder. *Olds* v. *Cummings,* 31 Ill. 188; *Sargent* v. *Howe,* 21 id. 148.

There was evidence that the note was given for money borrowed by Arbogast of Lucinda G. Bent, through a firm of brokers of which Davis was a member, and that payments of interest were made to Davis; but no authority in him to collect the principal can be inferred from this circumstance. *Cooley* v. *Willard,* 34 Ill. 68.

Where the agent has the possession of the promissory note after due, it may be inferred that he has authority to receive payment of it, but the burthen is on the debtor who makes payment to the agent, relying upon such inference, to show that the promissory note was in his possession when the payment was made. (*Williams* v. *Walker,* 2 Sandf. Ch. 325; *Haines* v. *Pahlman,* 25 N. J. Eq. 179; *Smith* v. *Kidd,* 68 N. Y. 130; Jones on Mortgages, 2d ed. sec. 964.) The fact that the note was neither surrendered nor offered to be surrendered, under the circumstances, is conclusive that he did not then have it. *Heuse* v. *Conisby,* 1 Ch. Cases, 93,—and see like ruling, in principle, by this court in *Lucas et al.* v. *Harris,* 20 Ill. 169; *Mayo* v. *Moore,* 28 id. 428; *Keohane* v. *Smith et al.* 97 id. 156.

But counsel seem to seriously contend that Stiger was not entitled to the possession of this note after he had paid it off, and, upon that ground, to excuse his not demanding its production before making payment. Surely no one can, at this day, seriously question that a party who buys a piece of land incumbered by a mortgage given to secure the payment of a promissory note, may pay off the note, and thus relieve his land from the incumbrance. (See Sheldon on Subrogation, sec. 28, *et seq.*) When the note is paid off, it needs the citation of no authorities to prove that the payee or assignee of the note is no longer entitled to its possession. Having received payment, the authority to make the payment, so far as he is concerned, is admitted, and there can be no conceivable purpose for which the payee or assignee of the note is then longer entitled to retain its possession. If the payment is made without any previous contract between the party whose duty it is to pay and the party paying, solely to protect the title of the latter against the incumbrance of the debt, the latter is, upon well settled principles, entitled to be subrogated to the rights of the previous holder of the indebtedness, and to that end to the possession of all papers relating thereto. (See Sheldon on Subrogation, *ut supra;* 1 Jones on Mortgages, 2d ed. sec. 874.) If the payment is made pursuant to a previous contract between the party whose duty it is to pay and the party paying, the latter may be regarded as the agent of the former, and hence entitled to receive and hold the evidence of indebtedness, after payment, for his benefit, as well as a voucher for his own protection. Arbogast, by selling the land to Biggs subject to the trust deed, authorized Biggs, by necessary implication, to pay off and take up the note ; and Biggs, by selling the land to Stiger, and accepting Stiger's payment of the amount secured by the trust deed as a payment of so much purchase money, it must, on like principle, be implied, conferred the same authority upon him. If, therefore, Stiger had paid off the note to the party

entitled to receive payment, he would, as against that party, have been entitled to the possession of the note as a voucher for the payment of that much purchase money, and to have had it cancelled as evidence of the existence of a lien against his land, although, as between himself and Arbogast, the latter might have been entitled to the possession of the note after its cancellation. There can be no reasonable pretence that the trustee is entitled to hold the note after its payment, for no duty is enjoined upon him by the deed in that respect.

In *Barbour* v. *Mortgage Co. et al.* 102 Ill. 121, we held that where a deed of trust given to secure a debt, was released by the trustee without the authority of the party secured, and he had never sanctioned or ratified the act, a subsequent incumbrancer could not obtain a prior lien; but that if the party secured by the deed of trust authorized the trustee to release the lien, or if he failed at once to repudiate the act of the trustee in making the release without authority, when informed of the fact, and lay by until third persons had advanced large sums of money upon the faith of what his agent had done, he would be estopped from repudiating the act as authorized,—and counsel insist that ruling is applicable to the present case. The only persons that can, in any sense, be claimed to have been here affected adversely by the delay in bringing this suit, are Mrs. Judith Stiger and John W. Stiger. It may be, if the complainant had promptly given notice of her rights when informed of the payment to Davis, Stiger would, by his will, have made other and equally adequate provision for these parties, and the decree of the circuit court proceeds upon that ground, and protects their interests. But it is impossible that, had she given such notice, Stiger could have made better or more ample provision for his residuary legatees than he did, for the recognition by him of the rights of Mrs. Bent would have reduced the residuum of his estate by whatever amount he would, in consequence, have given Judith Stiger and John W. Stiger in lieu of the

specific devises in their favor in this land, and so they now, doubtless, receive more than they would have received in that contingency, but in any event they receive as much.

It is argued, if complainant had promptly notified Stiger of her rights he might have taken steps that his representatives could not, after this suit was commenced, take, to protect his estate against loss. There is no evidence that Davis was less able to respond for the amount paid to him by Stiger when this suit was brought than he was in the spring of 1876, when Mrs. Bent was first informed of the payment to. him, and no statute of limitations barred a suit against him. The only evidence in regard to his insolvent condition is, that he had failed in January, 1876,—the January preceding the communication of the information to her in the spring. And since the fact is unquestioned that Davis did not surrender the note to Stiger, and that Mrs. Bent was not present, and was ignorant of the transaction, it is not apparent that any matter of evidence important to the interests of the legatees is lost by the death of Stiger.

The objection that Mrs. Bent was not called and examined as a witness in her own behalf, is answered by the fact that she was incompetent under the statute, the respondents appealing being legatees, and defending as such. The respondents might have introduced her as a witness, but they did not offer to do so. Rev. Stat. 1874, chap. 51, sec. 2.

There is no evidence in the record proving that by reason of the peculiar location or condition of this land, or the character and situation of the improvements thereon, or of any circumstances affecting it, mere delay in prosecuting complainant's suit may probably have produced an inequitable loss or injury to the residuary legatees therein, and this court is unable to perceive, of its own knowledge, how or why such a result should likely follow. A court of equity applies the doctrine of *laches* in denial of relief prayed, where the statutory period of limitations has not expired, only where, from

all the circumstances in evidence, to grant the relief to which the complainant would otherwise be entitled, will, presumptively, be inequitable and unjust, because of the delay, to the defendants.

The decree is affirmed.

*Decree affirmed.*

Mr. Justice Scott: I do not concur in this opinion.