## Peter Simon v. Anton Napieralski et al.

1. FRAUD—*General Maxim in Equity, Where One of Two Innocent Parties Must Suffer.*—Where one of two innocent persons must suffer a loss by the fraud of a third person, the loss must fall upon him who, by his conduct, has put it in the power of such third person to cause it.

Bill to Foreclose a Mortgage.—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded, with directions. Opinion filed February 21, 1902.

Statement of the Case.—On or about October 23, 1886, the defendant Anton Napieralski, through Theodore H. Schintz, a mortgage broker of Chicago, negotiated a loan of $3,000 upon certain real estate in said Chicago, being the property described in the bill of complaint in this proceeding, and in order to secure the payment of said loan, the said Napieralski and his wife executed a deed of trust, conveying said property to Theodore H. Schintz as trustee.

Said Napieralski also executed his one principal note in the sum of $3,000, which was payable five years after its date, and his ten certain interest notes or coupons, evidencing the installments of interest upon said loan during said period of five years; that said principal note and said interest coupons were made payable to the order of said Anton Napieralski, and were by him indorsed in blank; all of said notes, by their terms, were made payable at the office of Theodore H. Schintz, in Chicago.

At the time of the negotiation of said $3,000 loan, the defendant Napieralski paid to Schintz a commission of two and one-half per cent for negotiating this loan.

About the time of the maturity of this note, to wit, five years after its date, the time of payment of said loan and of said note was extended for a further period of five years by extension agreement duly executed by the said Anton Napieralski and his wife, Victoria Napieralski. At this time Napieralski paid Schintz a commission of two and one-half per cent for securing the extension of this loan.

When the said extension was made, new interest coupons were executed, and such coupons were made payable to the order of said Napieralski, and were by him indorsed in blank.

The complainant, Peter Simon, became the owner of this loan during the spring of 1894. He collected interest upon this loan at the office of Theodore H. Schintz, where the notes, both principal and interest, were made payable.

During August, 1896, the loan in question, under the terms of the extension agreement being about to mature, arrangements were made by Napieralski with Schintz that he (Schintz) should procure for him, Napieralski, from two men of whom Schintz knew, the sum of $2,800, $2,500 from one and $300 from the other; Napieralski having theretofore deposited the sum of $200 with Schintz, Schintz agreed to allow Napieralski interest upon said $200 at the rate of five per cent per annum.

On September 12, 1896, more than a month prior to the maturity of the note owned by the complainant Simon, Napieralski and his wife went to Theodore H. Schintz' office, executed a new note in the sum of $2,500, payable in five years, together with interest coupons, and a trust deed securing same, and also another note in the sum of $300, payable in two years after date, together with the interest coupons and trust deed securing the same. Both of these trust deeds ran to Theodore H. Schintz, as trustee. All of the notes so executed were made payable to the order of Anton Napieralski and were by him indorsed in blank.

At this time, upon the understanding that Schintz was to sell these notes, evidencing, respectively, the sums of $2,500 and $300, the said Napieralski paid to Schintz a commission of two and one-half per cent on $2,800, amounting to $70. This commission was for securing the loan from the two men referred to.

The $2,500 mortgage was sold by Schintz to the defendant Auten on October 12, 1896, Auten upon said date giving Schintz the sum of $2,500 and accrued interest, and receiving from Schintz said note and mortgage.

The $300 mortgage was sold by Schintz to the defendant Diedesch, on or prior to October 22, 1896.

On October 24, 1896, about the maturity of the principal note owned by Simon, a release of the trust deed securing same was recorded in the office of the recorder of deeds of Cook county, Illinois, by Schintz. At the time of the sale of the $2,500 and the $300 mortgages to defendants Auten and Diedesch, to wit, on September 12, 1896, and September 17, 1896, the Simon trust deed remained unreleased of record, unimpaired, and a good, valid and subsisting first lien upon the premises therein described.

On July 19, 1897, Theodore H. Schintz made a voluntary assignment for the benefit of his creditors.

Immediately that the complainant, Simon, learned of the failure of Schintz, he had the title to the Napieralski property examined into, and the record of the release deed in question was discovered. Thereupon the bill of complaint herein was filed.

The master to whom the cause was referred, found in and by his report that the equities of the cause were with the complainant, and recommended a decree of foreclosure in accordance with the prayer of the bill.

Exceptions were filed to the report of said master, and argued before the Circuit Court of Cook County; the said exceptions were sustained and the complainant's bill of complaint was ordered dismissed for want of equity.

From this order dismissing the bill of complaint herein the complainant, Peter Simon, has taken this appeal.

LACKNER, BUTZ & MILLER, attorneys for appellant.

YOUNG, MAKEEL, BRADLEY & FRANK, attorneys for appellees.

MR. JUSTICE SHEPARD delivered the opinion of the court.

At the time the extension of the original loan matured, in 1891, or in September preceding the maturity, it was plainly stated by Schintz to Napieralski that the $2,800 needed by Napieralski to pay the balance due on the original

mortgage, held by Simon, would have to be obtained from other parties; "one fellow has got $2,500 and another fellow has $300 and you can get them;" to which Napieralski replied, "All right, Mr. Schintz." Napieralski thereupon, or within two days thereafter, executed and delivered to Schintz the new trust deeds, one to secure $2,500 and the other to secure $300, together with notes to correspond. And Napieralski paid Schintz a commission of two and one-half per cent for getting the money. This appears from the testimony of Napieralski himself.

The papers, when executed, were left by Napieralski with Schintz for the purpose of paying off the old mortgage, and obtaining the new loan. For the performance of these acts, we have no doubt from the evidence that Schintz was constituted the agent of Napieralski. Schintz culpably neglected his duty as such agent, and instead of paying off Simon's original mortgage with the proceeds of the new loans, appropriated the money to his own use, and fraudulently executed a release of the original trust deed held by Simon.

This state of facts gives rise to the familiar principle of equity, that where one of two innocent persons must suffer a loss by the fraud of a third person, the loss must fall upon him who, by his conduct, has put it in the power of such third person to cause the loss. Yeck v. Crum, 122 Ill. 267; Morris v. Preston, 93 Ill. 215.

We do not see how Simon's connection with the original loan can be said to render him in any wise liable for Schintz' misconduct. He bought the original papers long before their maturity, no defense then existing to them, or equity being claimed against them, and held them ever thereafter, taking them all and putting them in his private box in a safety deposit vault. He never afterward intrusted Schintz with their possession. True, as the interest matured he took the interest coupons to Schintz' office, where they were by their terms payable, and received pay therefor through Schintz, but that was not enough to bind him with Schintz' fraudulent release. Stiger v. Bent, 111 Ill. 328.

As to the controversy between Simon and Auten and Diedesch, concerning their respective priorities, the public records of the Cook county recorder's office must control.

The fraudulent release by Schintz of the Simon trust deed was filed for record October 24, 1896. The Auten $2,500 papers were purchased by Auten on October 12, 1896, and the Diedesch $300 papers were purchased by Diedesch on or prior to October 22, 1896. The trust deeds given to secure the same were recorded, respectively, on September 12, 1896, and September 17, 1896. So that, at the times when the purchases were made and the trust deeds were recorded, Simon's trust deed remained unreleased of record and constituted a first and unimpaired lien on the premises. The fraudulent release executed and put on record by Schintz, in no way impaired that lien, and nothing that is shown to have been done by Simon can be held to have had the effect to subordinate his first lien to that of Auten and Diedesch.

The decree of the Circuit Court will therefore be reversed and the cause remanded, with directions to that court to enter a decree in accordance with the master's report. Reversed and remanded, with directions.