# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—FEBRUARY TERM, 1886.

ROBERT B. SMITH ET AL., Adm'rs, etc.,

v.

WILLIAM H. HALL, Adm'r, etc.

1. INTEREST IN LAND—DESCENDS TO HEIRS.—An interest in land descends to the heirs, and will not pass to an administrator as would a chose in action, or personal estate.

2. AGENCY—TO COLLECT.—An agent employed to make or negotiate a contract is not as of course to be treated as having an incidental authority to receive payments which may become due on such contracts. An agent intrusted to receive payment of a negotiable or other instrument is ordinarily entitled to receive it only when and after it becomes due, and not before, unless there be a known usage of trade or course of business in a particular employment or habit of dealing between parties extending the ordinary reach of authority.

APPEAL from the Circuit Court of Madison county; the Hon. AMOS WATTS, Judge, presiding. Opinion filed April 15, 1886.

Messrs. WISE & DAVIS, for appellants; as to agency, cited Thompson v. Elliott, 73 Ill. 221; Draper v. Rice, 56 Ia. 114; Dutcher v. Beckwith, 45 Ill. 460; Peabody v. Hoard, 46 Ill. 242; Meyers v. Barnes, 65 Ill. 70; Mathews v. Hamilton, 23 Ill. 470.

Smith v. Hall.

Messrs. METCALFE & BRADSHAW, for appellee; cited Noble
v. Nugent, 89 Ill. 522; Anderson v. Conly, 21 Wend. 279;
M. State Life Ins. Co. v. Advance Co., 80 Ill. 549; Harris v.
Simmerman, 81 Ill. 413; Doan v. Duncan, 17 Ill. 274; Story
on Agency, § 127; 2 Kent's Com., 8th Ed., 798.

GREEN, J. The claim which is the subject-matter of this
suit was filed by the heirs of Maria Merchant in the County
Court of Madison county against the estate of Sarah P. Smith,
and upon a hearing there was a finding and judgment by the
court for the defendants, Robert B. Smith and Sarah B.
Smith (administrators of the estate of Sarah P. Smith), for
costs. From this judgment the claimants appealed to the
Circuit Court of Madison county, and at the March term, 1884,
thereof, said cause was tried by the court and a jury, and a
verdict for plaintiffs was rendered for the sum of $500; which
verdict on the motion of defendants was set aside and a new
trial awarded. The cause was then continued from term to
term until the March term, 1885, of said circuit court, at
which term leave was granted by the court to substitute
William H. Hall, administrator of the estate of Maria Mer-
chant, as plaintiff, in the place and stead of said claimants, and
at the same term (Hall then becoming plaintiff) the cause was
tried by the court without a jury by consent of all the parties,
resulting in a finding and judgment by the court in favor of
appellee as administrator, and against appellants as adminis-
trators, for the sum of $1,706 and costs of suit, to be paid in
due course of administration; to reverse which judgment
appellants took this appeal. The said claim is for the value
of a lot in Minneapolis, Minn., sold by appellant's intestate
under a power contained in a mortgage, and is based upon the
alleged facts that said intestate, Sarah P. Smith, conveyed
said lot to one Ole H. Mahla by warranty deed, on February
28, 1872, and received from him in part payment therefor his
three promissory notes for $100 each, payable to her in one,
two and three years respectively, with ten per cent. interest,
secured by mortgage upon said lot; that all of said notes were
paid to her at maturity, or before maturity, and were so paid

Smith v. Hall.

during her lifetime; that after all of said notes and interest had been so paid, she caused said mortgage to be foreclosed by advertisement and sale in the county where said lot was situated, claiming that about one hundred dollars of the sum secured by said notes and mortgage was due and unpaid; that at said sale one Charles Woods purchased said lot for the amount so claimed to be due and unpaid, and interest, costs and attorney's fee; that the time had expired for redeeming from said sale before said claimants or any one of them had any knowledge of said foreclosure, or knowledge that any claim was or had been made that said lot was not fully paid for; that the Supreme Court of Minnesota had decided in a suit brought by claimants against said Woods to recover said lot; that the title thereto had passed to and become vested in him by said purchase at said foreclosure sale; that said lot was deeded by Ole H. Mahla to John Fallon on July 5, 1872 and by Fallon to William H. Connelly on October 2, 1873; that Connelly died in August, 1874, intestate, leaving him surviving Anna M. Connelly, his daughter and only heir, who died intestate and without issue in January, 1875, leaving as her only heir, her maternal grandmother, said Maria Merchant, who died in February, 1877, testate, and devised said lot to claimants, and that the value of lot at time of filing claim in the county court was $1,100.

The evidence establishes satisfactorily these facts: That, William H. Connelly died intestate in August, 1874, leaving only one heir, said Anna M. Connelly, a minor, who died unmarried and without issue and intestate in January, 1875, leaving no heir other than said Maria Merchant, her maternal grandmother, who died in February, 1877 (but not testate as shown by any competent evidence in the record); that said claimants, Harvey N. Merchant, Mary Hewins, Emeline Hewins and J. G. Merchant, are the children and only heirs at law of said Maria Merchant; that said lot was conveyed (as alleged in said claim,) by Sarah P. Smith, appellant's intestate, to Ole H. Mahla, by him to John Fallon and by him to William H. Connelly, subject to the mortgage from Mahla to said Sarah P. Smith; that said mortgage and three

notes secured thereby for $100 each were executed by said Mahla to secure part of the purchase money of said lot and were delivered to said Sarah P. Smith as alleged in said claim; that said foreclosure sale of said lot was legally made on May 5, 1877 ; that said Woods purchased said lot at said sale, received a deed therefor and thereby became the owner thereof in fee, and said children and heirs of Maria Merchant were thereby divested of all title to or in said lot, and that appellee was duly appointed administrator of the estate of said Maria Merchant on March 4, 1885; the value of the lot in the view we take of this case is not important. From these facts established by the evidence, we are of the opinion that the plaintiff below, as administrator, could not maintain this suit, even upon the theory that his intestate died seized in fee of said lot free from the lien of the Mahla mortgage, because at the time of her death the foreclosure sale had not been made ; no claim for damage or right of action had then accrued to her by reason thereof. Her only interest as claimed at the time of her death was in the land descended to her heirs at her death, and would not pass to her administrator as would a chose in action or personal estate. This doctrine is declared quite fully in Buck v. Eaman, 18 Ill. 528 ; hence the judgment below recovered by plaintiff *as administrator* was erroneous.

We do not reverse on this ground alone, but hold that had the heirs of Maria Merchant themselves prosecuted this claim as plaintiffs they could not lawfully recover upon the facts proven. To justify such recovery it was indispensable to prove by a preponderance of the evidence that the whole amount, principal and interest, of the third $100 note, secured by the Mahla mortgage, had before said sale been paid to Sarah P. Smith or to her agent, authorized to receive and receipt therefor at the time of payment, or whose act in so receiving and receipting was afterward assented to and ratified by her; otherwise the sale of the mortgaged lot to satisfy said note and interest or so much thereof as was unpaid would have been lawful, and those claiming under the mortgagor could not recover anything from said Sarah P. Smith unless a surplus of the proceeds of such sale remained in her hands

Smith v. Hall.

after satisfying debt, interest, costs and expenses, and then only such surplus would be recoverable. But no question of surplus of proceeds arises here ; the evidence relied upon by plaintiff to prove full payment of this third mortgage note consists of one Hancock's testimony and this receipt signed by him.

" April , 10, 1874. Received of W. H. Connelly, assignee of Ole Mahla, ninety-two dollars in full payment of the Mahla mortgage.

H. B. HANCOCK,<br>Agent for Sarah P. Smith.'

The note which is claimed to have been paid by this ninety-two dollars was the third and last due of the three notes secured by the mortgage on said lot. It was not in Hancock's possession, or at least was not produced at the time Connelly made this payment, and when it afterward came to the hands of Charles Woods as agent for Sarah P. Smith, had no credits indorsed on it other than interest to Feb. 20, 1874 ; and Hancock testifies a balance of eight dollars principal of said note, and interest on the $100, from February 20 to April 10, 1874, might have remained unpaid when he had received this ninety-two dollars and don't remember it was ever paid. Thus, notwithstanding the receipt, taking all the evidence together, it does not appear that the said mortgage debt was fully paid even to Hancock, and said note was not then due. In addition to this receipt the only evidence on behalf of plaintiff tending to prove the character and extent of Hancock's agency was his own testimony. He says : " I first knew Sarah P. Smith in 1856 ; was her agent in regard to her property interests in Minneapolis ; authority was both verbal and written, by letter correspondence, not formal power of attorney ; have no writings showing such authority other than letters ; was such agent until Charles H. Woods was appointed. The deed from Sarah P. Smith to Ole H. Mahla (of the lot in question here) was in my possession when sale was made ; I delivered it to him in pursuance of a contract of sale made with him by Sarah P. Smith ; was directed to deliver it to him on receipt of down money on the sale, and notes for balance

of purchase money ; sent mortgage to her after it was recorded,. and the notes doubtless at same time. They were returned to me for collection before maturity or about that time : did not surrender remaining note when final payment was made to me, either because I had not received it from Mrs. Smith or could not find it ; received it either shortly before or after that payment." And on cross-examination says : " Have no recollection of the time I received the last note from Mrs. Smith." The foregoing is all the testimony on behalf of plaintiff to prove the authority given by Sarah P. Smith to Hancock to collect this third note before its maturity (other than his testimony detailing what was said. and done at the time of giving this receipt, hereafter adverted to), and falls far short of proving such authority to him. The law of agency material as affecting the rights of the parties in interest in this case is stated in Story on Agency, Sec. 98, Paley on Agency, by Loyd, 290, 291, and is cited and approved in Thompson v. Elliott, 73 Ill. 221, 222. In the latter case it is said in the opinion, " The doctrine is pretty well settled and not controverted, that an agent employed to make or negotiate a contract is not, as of course, to be treated as having an incidental authority to receive payments which may become due on such contract, and it is further laid down by the authorities, that an agent intrusted to receive payment of a negotiable or other instrument, is ordinarily entitled to receive it only when and after it becomes due, and not before it becomes due ; but if there be a known usage of trade or course of business in a particular employment or habit of dealing between parties, extending the ordinary reach of authority, that will be held to give full validity to the act." We find nothing in the facts proven in this case to take it out of the rule above announced, or bringing it within any of the exceptions named. On the contrary, this is one of the cases in which the rule should be strictly applied. Mrs. Smith never received this payment of $92, or any part thereof, nor did her administrators. She was not informed by Connelly or Hancock such payment had been made, and never knew it had been made. It further appears that at the time of this payment Connelly had never dealt with Hancock as the agent of

Smith v. Hall.

Mrs. Smith or knew him to be such. He knew the note was not due; that Mahla had given it and secured it by mortgage on his lot; that it was unpaid and was a lien thereon. Mrs. Smith was not present when the payment was made, nor was the note produced. Hancock exhibited no authority to act as the agent of Mrs. Smith, nor does he claim he told Connelly he was such agent, but this is his testimony as to what was said and done at time of giving receipt: "Connelly and some one with him came to pay off the mortgage; I could not find the note; I told him if they would pay it I would see that they got the note and have the mortgage satisfied, as it was common for me to receive money for her, although I might not have the note and mortgage; they relied on this and paid the money." It thus appears that Hancock exhibited no evidence to Connelly of his agency, did not claim Mrs. Smith had authorized him to receive this payment or collect this note, but because it was common for him in the past to receive money he assumed the right in this instance to do so and take $92 in full payment of a note belonging to her, without any means to determine the amount due thereon, and promised that *he*, not Mrs. Smith, would see that they got the note, and *he*, not Mrs. Smith, would have the mortgage satisfied, from all the evidence. It not only appears that the vital fact of Hancock's authority to collect this note before maturity remains unproven, and no evidence of the subsequent ratification by Mrs. Smith of his act of receiving the payment is shown, but further, from Hancock's testimony it would appear that Connelly, instead of regarding him as Mrs. Smith's agent, employed Hancock as his own agent to procure and surrender the note and see that the mortgage was satisfied, and relied upon Hancock's promise to do so, and should be bound by his acts. Finding then, as we do, that Sarah P. Smith did not receive in person, and no one lawfully authorized so to do received for her, the principal sum of said last note for $100 and accrued interest, that the same remained and was unpaid at the time of the mortgage sale to Woods, that she had the right to sell said lot for default in such payment, as was done, it follows the judgment of the circuit court must be reversed.

Judgment reversed.