## Anthony T. Zazzaro et al. *v.* Universal Motors, Inc.

Maltbie, C. J., Hinman, Avery, Brown and Jennings, Js.

Argued February 2d—decided March 2d, 1938.

*Edwin M. Ryan,* with whom, on the brief, was *Richard D. O'Connell,* for the appellants (plaintiffs).

*Abe A. Ribicoff,* for the appellee (defendant).

BROWN, J. This is an action to replevy a Studebaker automobile. On October 14th, 1936, the defendant automobile dealer owned this car. At the request of Horwitz, not its employee but salesman for another dealer, the defendant let him take it to demonstrate to a prospective buyer for sale at $400 net. Horwitz negotiated its sale that day to Anthony Zazzaro, hereinafter called the plaintiff, for $400 plus the turn-in of his Hudson car. The plaintiff delivered the Hudson to Horwitz and a check to his order for $100. Horwitz reported to the defendant he could sell the car for $100 cash and the $300 balance in twenty days, but was told the terms must be $100 in cash and a note for the balance secured by a conditional bill of sale, signed before delivery of the car. Pursuant to arrangement with him, as the plaintiff knew, Horwitz returned the car to the defendant's place of business for stated repairs.

On October 14th the plaintiff had told Horwitz he would pay the $300 as soon as he received it from a loan on his life insurance. On October 20th the plaintiff objected to signing the note and conditional bill of sale prepared by the defendant and presented to him by Horwitz for signature pursuant to its instructions, stating he expected the money from the insurance company any day. Horwitz replied the papers were only a matter of form and that he would hold them himself until the $300 was paid. The plaintiff then signed and gave them to Horwitz who delivered the Studebaker to him. The defendant did not know the purchase price agreed included the Hudson

car and never received it from Horwitz, but did receive forthwith from him and still has the note for $300 payable to its order November 2d, 1936, and the conditional bill of sale entitling it to retake the car upon default of payment on the note. On October 24th the plaintiff received the insurance company's check for $300 and next day delivered it indorsed in blank to Horwitz in return for his receipt in full for payment for the car, knowing the note and bill of sale were outstanding and thinking it strange to make this payment without getting the latter back. Horwitz promised to bring the note to the plaintiff but told him he couldn't deliver the conditional bill of sale as it would be coming through the office of the defendant. The plaintiff had signed promissory notes before and so was familiar with them. The plaintiff never made any inquiry as to the limits of Horwitz's authority. Horwitz paid the $100 to the defendant but no part of the $300. The defendant gave Horwitz no express authority to collect the balance of $300, nor did it hold him out to the public as possessing any authority to collect notes payable to its order. On October 26th the defendant inquired of the plaintiff concerning payment of the $300 and was told he had paid it to Horwitz. Although demand was made, the plaintiff never paid the defendant. The defendant repossessed the Studebaker car from the plaintiff.

Upon these facts found, the court concluded that Horwitz had no authority to accept the $300 from the plaintiff in discharge of the note, that the plaintiff in paying the $300 to him without obtaining the return of the note failed to exercise reasonable care under the circumstances, and that the plaintiff, being still indebted, was in default under the conditional sales contract and the defendant was entitled to immediate possession of the Studebaker car. It gave judgment

for the defendant to retain possession thereof. The question determinative of this appeal is whether the court was warranted in concluding that Horwitz had no authority to accept the $300 from the plaintiff in discharge of the note. The court's finding that Horwitz had no express authority from the defendant to collect this money, and that it did not hold him out to the public as possessing any authority to collect notes payable to its owner, that is, that he had no apparent authority so to do, is not attacked. Our inquiry is narrowed therefore to the single question of whether the court was warranted in concluding that he had no implied authority to do this.

This court has stated the general principle as to implied powers incident to the agency relationship in these words: "The creation of an agency carries with it the usual and appropriate means of accomplishing its object, and clothes the agent with such authority as is proper and necessary to effectuate its purposes." *Kearns* v. *Nickse*, 80 Conn. 23, 25, 66 Atl. 779. The American Law Institute, in dealing with the question as to the circumstances under which incidental authority is inferred, says: "Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." Restatement, 1 Agency, p. 89, § 35. And under Comment a, it is further stated that "conversely to the rule . . . , prima facie, an agent is not authorized to do acts not incidental to the transaction, nor usually done in connection therewith nor reasonably necessary." The application of this principle to the undisputed facts of this case, makes evident that the court was warranted in concluding that Horwitz had no authority to accept payment of the note. As the defendant's agent for this isolated transaction only and pursuant

to express instructions, he sold this car known by the plaintiff to belong to the defendant for the $100 cash plus his note to its order for $300 due thirteen days later and secured by the conditional bill of sale, both of which instruments were forthwith turned over to the defendant which kept them. Horwitz collected the note before maturity. Under these circumstances authority in Horwitz to accept payment of the note was neither proper nor reasonably necessary to doing the act directed or to accomplishing the result specified by the defendant. Nor was the acceptance of such payment either a usual or an appropriate means to that end. It cannot be said to have been incidental thereto.

Authorities consonant with this conclusion are numerous. "Unless otherwise agreed, authority to sell includes only authority to sell for money payable at the time of the transfer of title." Restatement, Agency, p. 159, § 65. This rule applies where, as here, the principal has intrusted the agent with possession of an article which he is to sell and deliver. In that case it is to be presumed that payment and delivery are to be substantially concurrent acts, so that the agent who is authorized to deliver must be presumed to be authorized to complete the sale by receiving payment. 1 Mechem, Agency (2d Ed.) p. 616, § 865; *Bailey* v. *Pardridge,* 134 Ill. 188, 27 N. E. 89. But where the price is to be paid in instalments, the agent, though having thus implied authority to receive the instalment to be paid at the time of delivery, would ordinarily thereby exhaust his authority and would have no implied authority to subsequently receive the remaining instalments. 1 Mechem, Op. Cit., p. 617; Restatement, 1 Agency, p. 149, § 62, Comment a, 2d paragraph. Employment of an agent to sell does not authorize him later to collect the sale price. *Seiple* v.

*Irwin,* 30 Pa. St. 513; *Butler* v. *Dorman,* 68 Mo. 298. Especially is this true where, as here, a note has been given for the balance of the purchase price payable to the principal's order with interest. Authority in the selling agent to take such a note for the article sold, does not give him the implied power to accept payment of it. 2 C. J. S. 1274; *Seiberling* v. *Demaree,* 27 Neb. 854, 44 N. W. 46; *Holland* v. *Van Beil,* 89 Ga. 223, 15 S. E. 302; 1 Mechem, Op. Cit., p. 620, §869. Particularly is this so after the agent has delivered the note to the principal. 1 Mechem, Op. Cit., p. 686, § 952; *Draper* v. *Rice,* 56 Iowa 114, 7 N. W. 524, 8 N. W. 797; *Rhodes* v. *Belchee,* 36 Ore. 141, 59 Pac. 117. "Ordinarily nonpossession of the evidence of indebtedness tends strongly to negative any authority in the agent to collect or receive payment and is inconsistent with the presumption that such authority exists." 2 C. J. S. 1276, § 107 (4); *Budd* v. *Broen,* 75 Minn. 316, 77 N. W. 979; 2 Am. Jur., p. 129, § 161.

The court's conclusion that Horwitz had no authority to accept the $300 in discharge of the note was correct. Nor is a different result called for by the specific contention in the plaintiff's brief that even though the finding determines that the defendant did not hold Horwitz out to the public as possessing authority to collect notes payable to its order, the facts establish a reasonable belief in the plaintiff that Horwitz had authority to accept this $300 note to hold only as a matter of form as he stated, and so to accept payment of it four days later under the principle stated in *Quint* v. *O'Connell,* 89 Conn. 353, 357, 94 Atl. 288. This claim apparently overlooks the elements essential to apparent authority there referred to. One is that the principal must have held the agent out to the public as possessing the requisite authority, and the other that the one dealing with the

agent and knowing of the facts, must have believed in good faith and upon reasonable grounds, that the agent had the necessary authority. Apparent power of an agent is to be determined not by his own acts but by those of the principal. Upon the facts found the court was correct in concluding that the plaintiff could not reasonably have believed that Horwitz had authority to accept payment of the note without the coincident surrender of it.

There is no error.

In this opinion the other judges concurred.